### In the Matter of the Estate of Bobby Dean NATION, Deceased.

### Doris Dean Nation LEE and Mark Nation, Appellants,

### v.

### Janice Marie NATION, Personal Representative of the Estate of Bobby Dean Nation, Deceased, Appellee.

### No. 78918.

Supreme Court of Oklahoma.

June 30, 1992.

As Corrected July 29, 1992.

### ORDER

Appellee's motion to dismiss is granted and this appeal is dismissed as untimely. The order of the district court denying appellants' application to share as omitted children is an interlocutory order appealable by right. 58 O.S.1991, § 721(10) and Rule 1.60 of the Rules of Appellate Procedure in Civil Cases, 12 O.S.1991, ch. 15, app. 2. Appeals of interlocutory orders appealable by right in a probate proceeding must be commenced within thirty days from the date of the hearing at which the order was issued. Rule 1.61 of the Rules of Appellate Procedure in Civil Cases, 12 O.S.1991, ch. 15, app. 2. The interlocutory order on appeal was pronounced at the hearing on December 4, 1991, at which the appellants or the appellants' attorney were present, therefore the interlocutory order was issued at that hearing. This appeal was commenced on January 15, 1992, more than thirty days after the interlocutory order was issued. Thus, this appeal was not timely filed to invoke the jurisdiction of this court.

This dismissal shall not prejudice the rights of the appellants to reassert their application before the trial court prior to final decree of distribution of the estate and to seek appellate review of the final decree entered in the probate proceeding.

DONE BY ORDER OF THE SUPREME COURT.

LAVENDER, SIMMS, HARGRAVE, ALMA WILSON, KAUGER and WATT, JJ., concur.

SUMMERS, J., concurs specially.

OPALA, C.J., and HODGES, V.C.J., dissent.

SUMMERS, Justice, concurring specially.

I agree with the majority in concluding that an order denying an appellant's application to share in an estate as a pretermitted child is an interlocutory order appealable by right. 58 O.S.1991 § 721(10). Since the case of *In re Tayrien's Estate*, 207 Okl. 401, 250 P.2d 16 (1952) appears to hold that such an order is *not* appealable under § 721, I would go a step further and expressly overrule *In re Tayrien's Estate* to the extent it is inconsistent with today's order.

OPALA, Chief Justice, with whom HODGES, Vice Chief Justice, joins, dissenting.

The court dismisses for untimeliness an appeal from a mid-probate order that denies appellants' claim—as unintentionally omitted children—to a statutory share of decedent's estate.[1] Today's opinion reasons that the order in contest is interlocutory[2] and hence must be appealed,[3] if at

---

1. A child unintentionally omitted from a will is sometimes referred to as a pretermitted or omitted heir. Where a testator unintentionally fails to mention in his will or make provision for a child—either living at the date of the will's execution or one born later—statutory law may afford that child a share in the estate as though the testator had died intestate. Black's Law Dictionary 1069 (5th ed.). For the terms of Oklahoma's unintentionally omitted-child statute, *see* 84 O.S.1991 § 132, *infra* note 11. In this dissent I use the terms "omitted child," "omitted heir," or "pretermitted heir" as synonyms.

2. An interlocutory decision is one made in advance of judgment. It is not appealable unless it (a) falls within a class of interlocutory orders appealable by right—such as those enumerated in 58 O.S.1991 § 721(1-6), (8-10)—or (b) is cer-

tified by the trial court for immediate review as one that affects a substantial part of the merits of the controversy. *See* 12 O.S.1991 § 952(b)(3) and Part II(A), Rules of Appellate Procedure in Civil Cases, 12 O.S.1991 Ch. 15, App. 2.

The *practical* remedial distinction between *interlocutory* appeals and those from *final orders ancillary to the main action* is that the *statutory trigger* for the two types of midstream appeals differs. *Interlocutory orders* are appealable within thirty days of the decision's *pronouncement.* 12 O.S.1991 § 993, *infra* note 4. The *thirty-day* period for appealing from *final orders* runs from the date they are *filed.* 12 O.S.1991 § 990A(A), *infra* note 5.

3. Appealable probate orders are enumerated in 58 O.S.1991 § 721, which provides:

all, within thirty days of its *rendition* [4] rather than thirty days after its *filing*.[5] I must recede from the court's pronouncement. *I would review the nisi prius order at once because it is final as the disposition of a "collateral" ("off-track")* [6] *contest for pretermitted-heirship status.* This appeal, brought within *thirty days* of the order's *filing*,[7] is hence *timely.*

"An appeal may be taken from the following judgments or orders of the district court:
1. Granting, or refusing, or revoking letters testamentary or of administration, or of guardianship, or conservatorship;
2. Admitting, or refusing to admit, a will to probate;
3. Against or in favor of the validity of a will or revoking the probate thereof;
4. Against or in favor of setting apart property, or making an allowance for a widow or child;
5. Against or in favor of directing the partition, sale or conveyance of real property;
6. Settling an account of an executor, or administrator or guardian;
7. *Refusing,* allowing or directing the distribution or partition of an estate, or any part thereof or *the payment of a* debt, claim, legacy or *distributive share;*
8. Refusing or allowing the release of estate tax liability;
9. An order determining liability for estate taxes made pursuant to Section 268 of this title; or
10. From any other judgment, decree or order of the court in a probate cause, or of the judge thereof, affecting a substantial right." [Emphasis mine.]

4. *The time for appeals from interlocutory orders* is prescribed by 12 O.S.1991 § 993, which provides in pertinent part:
"... [T]he party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause, by *filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order is issued....*" [Emphasis mine.]
*See also* Rule 1.61, Rules of Appellate Procedure in Civil Cases, 12 O.S.1991, Ch. 15, App. 2, which provides in pertinent part:
"An appeal from these interlocutory orders of the district court may be commenced by filing a petition in error ... within thirty days of the date of the order. The date of the order shall be the *date of the hearing at which the*

## I
## A
## CRITICAL FACTS

The father's [testator's] will was admitted to probate.[8] It bequeaths to his two children certain corporate stock in equal shares. Before his death the testator sold this stock. The children initiated a mid-probate proceeding for a distributive share of the estate,[9] urging that since their testamentary gift failed by ademption,[10] they should be declared [11] to stand as omitted

*order was issued* if the appellant or the appellant's attorney were present. * * *" [Emphasis mine.]

5. *The time for appeals from final orders* is prescribed by 12 O.S.1991 § 990A(A), which provides in pertinent part:
"An appeal to the Supreme Court may be commenced by filing a petition in error with the Clerk of the Supreme Court *within thirty (30) days from the date the final order or judgment is filed....*" [Emphasis mine.]

6. In this dissent the words "collateral" and "off-track" are used as synonyms for issues ancillary to the probate proceeding's "mainstream" or to its "on-track" parts.

7. The court's decision denying petitioners omitted-child status was *announced* on December 4, 1991, with all counsel present. The order memorializing the court's decision was *filed* December 23, 1991. This appeal was lodged January 15, 1992.

8. Janice Marie Nation is the estate's personal representative.

9. For the terms of the statute that protects a child unintentionally omitted from a will, *see* 84 O.S.1991 § 132, *infra* note 11. The children seek the share they would have taken had their father died intestate. The terms of 84 O.S.1991 § 213 identify that share's quantum.

10. *Ademption* of a gift occurs when a testator *disposes of that part of his estate which is specifically devised* or bequeathed. *It is hence impossible to carry out the terms of the will.* In Re Van Duyne's Estate, 205 Okl. 440, 239 P.2d 387, 392–393 (1951).

11. The pertinent terms of 84 O.S.1991 § 132 are:
"When any testator *omits to provide in his will for any of his children ... unless it appears that such omission was intentional,* such child ... must have the *same share in the estate of the testator, as if he had died intestate,* and succeeds thereto as provided in the preceding section [§ 131]." [Emphasis mine.]

heirs.[12] In support of their argument they point out the will contains no language that would disinherit them.

## B

### ANALYSIS OF PROCEEDINGS IN PROBATE

A clearer perception of this litigation's anatomy emerges when the probate's various phases are arranged in trichotomous segments. The beginning stage of the proceeding was a petition to probate the document offered as the testament of Bobby Dean Nation, deceased. The will's admission to probate ended Stage I. The second stage was triggered by the children's application to settle a collateral (or off-track) issue—their omitted-heirship status. This stage is best described as an *ancillary contest anterior to the estate's distribution* pursuant to the will. It ended with the December 23rd order now under review, which concluded the off-track contest between the estate and the children *qua* omitted heirs. The third and final stage yet to follow is the administration of the estate and its distribution *under the will. The court's Stage II decision now tendered for review (a) cuts off the children's interest in the estate, (b) extinguishes their right to share in its eventual distribution and (c) shuts them out of the Stage III proceedings.*[13]

## II

### THE OFF–TRACK CONTEST FOR UNINTENTIONALLY OMITTED–CHILD STATUS RESULTED IN AN APPEALABLE ORDER THAT IS FINAL

Because the omitted-child statute[14] prescribes no limit for bringing a claim, we turn to extant case law in search of a pronouncement on the appropriate time to press the demand. A plea for omitted-child status may *not* be raised as a barrier to the will's admission to probate nor in a post-probate will contest.[15] If the will is legally executed, proved and found not vulnerable for (a) want of testamentary capacity, (b) undue influence, (c) fraud or (d) duress, it is admissible for probate.[16] One claiming omitted-heirship status may not seek *partial distribution*[17] of the estate within the parameters of 58 O.S.1991 § 621;[18] *prede-*

---

**12.** The Uniform Probate Code's provision for unintentionally omitted children applies only to those *children born or adopted after the execution of the will. See* Uniform Probate Code § 2-302 (Ninth ed. 1990), which provides in pertinent part:

"(a) Except as provided in subsection (b), if a testator fails to provide in his [or her] will for any of his [or her] *children born or adopted after the execution of the will,* the omitted after-born or after-adopted child receives a share in the estate as follows:...." [Emphasis mine.]

The subsection (b) exception applies to omissions that appear from the face of the will to have been *intentional* and to instances where the testator provided for the omitted after-born or after-adopted child *outside the will.*

*Neither the Oklahoma omitted-child statute, see supra note 11, nor the Uniform Probate Code section under discussion here explains how or when within a probate proceeding the available remedy for assertion of omitted-heirship status may be invoked. See infra Part II for comment that one's claim as an omitted child may be brought any time before the estate's distribution is final.*

**13.** This mid-probate order bears a close analogy to one that denies intervention. Both result in *shutting* the aggrieved party *out* of participating in proceedings yet to be conducted in the case.

The order that denies intervention is appealable as final. Rule 1.10(a)(14)(5), Rules of Appellate Procedure in Civil Cases, 12 O.S.1991 Ch. 15, App. 2; *Stubblefield v. General Motors Acceptance Corp.,* Okl., 619 P.2d 620, 624 (1980).

**14.** *See supra* note 11 for the terms of the omitted-child statute, 84 O.S.1991 § 132.

**15.** *Fisher v. Gear,* 196 Okl. 18, 162 P.2d 182, 183 (1945). A will may be contested before its admission to probate, 58 O.S.1991 § 29, or in a post-probate will contest within three months of its admission, 58 O.S.1991 § 61.

**16.** *Fisher, supra* note 15 at 183 of 162 P.2d.

**17.** *In Re Tayrien's Estate,* 207 Okl. 401, 250 P.2d 16 (1952). Some cases suggest that *Tayrien* stands for the proposition that the "proper" time to raise *any fact decisive of heirship and distribution* is by *objection to the final account and decree of distribution. See, e.g., In Re Rettenmeyer's Estate,* Okl., 345 P.2d 872, 878 (1959) and the cases it cites. This view of *Tayrien is overbroad. Tayrien* teaches only that one claiming pretermitted-heir status may not seek predecree distribution of the estate, not that an application to determine omitted-child status may not be brought as a collateral proceeding anterior to the estate's distribution.

**18.** The pertinent terms of 58 O.S.1991 § 621 are:

*cree distribution* is reserved for those whose right to inherit is unclouded.[19] While one *may*, of course, bring a claim for omitted-heirship status as an objection to the estate fiduciary's final account and petition for distribution,[20] an earlier resolution of the contest is *nowhere inhibited.*[21] *So long as the children's demand does not challenge the will's factum or seek predecree distribution, they may initiate a collateral contest to have their omitted-child status determined at any time before the estate's distribution is effected.*[22] Once the claimed status is *denied,*[23] the probate will not come to an end, but the order is nonetheless final because it carries the independent (off-track) contest to termination.

The order for review here bears striking similarity to certain rulings that fall within the federal "collateral order" class.[24] The doctrine governing this class of decisions permits midstream appeals from certain orders that do not terminate a federal-court action.[25] Its origin is found in the United States Supreme Court's expansive interpretation of the finality requirement in 28 U.S.C.A. § 1291.[26] Within this rather small class of at-once appealable off-track orders are those which (1) *finally decide claims*

"At any time after the lapse of three (3) months from the issuing of letters testamentary ... *any heir, devisee, or legatee* ... may present his *petition to the court for the legacy or share of the estate to which he is entitled,* to be given to him upon his giving bond, with security, for the payment of his proportion of the debts of the estate unless said bond is not required by the court." [Emphasis mine.]

19. *In re Coyne's Estate,* 103 Okl. 279, 229 P. 630 (1924).

20. See *Matter of Estate of Severns,* Okl., 650 P.2d 854 (1982); *Arment v. Shriner's Crippled Children's Hospitals,* Okl., 298 P.2d 1048 (1956).

21. We have expressed concern for *expediency* in the prosecution of *all post-probate will challenges. Matter of Estate of Speake,* Okl., 743 P.2d 648, 653 (1987). Judicial concern for expediency should not be reserved for a particular kind of probate challenge. Final resolution of omitted-heirship contests *before the estate's settlement* is consistent with sound principles of judicial economy.

22. A decree of distribution is conclusive as to the rights of heirs, legatees, or devisees. It is, of course, subject to reversal or modification on appeal. 58 O.S.1991 § 632. *See Buford v. Stuart,* Okl., 412 P.2d 169, 174 (1966); *Oberlander v. Eddington,* Okl., 391 P.2d 889 (1964).

23. Had the trial court *allowed* the children the omitted-heir status they sought, I would not view its order as appealable. It would *leave the parties below to have the remaining issues tried. See Sokolosky v. Black, Sivalls & Bryson,* 197 Okl. 68, 168 P.2d 618, 619 (1946). We are accustomed to dealing differently with appealability of opposite rulings upon the same issue. A dichotomous approach governs summary judgment process. A summary judgment's *denial* may *not* be appealed. *See* Rule 1.50, Rules of Appellate Procedure in Civil Cases, 12 O.S.1991 Ch. 15 App. 2. Yet, summary judgment is ap-

pealable. *See, e.g., Frey v. Independence Fire & Cas. Co.,* Okl. 698 P.2d 17, 20 (1985).

24. "Collateral orders" in the federal-law sense are appealable as final decisions without regard to the mainstream litigation's posture. To fit within this class an order must dispose of a claimed right that is not an essential ingredient of the main cause and can be considered separately from it. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–547, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

25. *Cohen, supra* note 24 at 546–547, 69 S.Ct. at 1226. A classic example of the collateral order is afforded by Rule 11 sanctions. *See* Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A. A Rule 11 order is like the imposition of costs, attorney's fees and contempt punishment. It is *dehors* the merits of an action; it decides a collateral issue. The proceeding focuses on abuse of judicial process, and, if one be found, on an appropriate sanction. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 385, 110 S.Ct. 2447, 2450, 110 L.Ed.2d 359, 376 (1990). Collateral order review is particularly appropriate when the sanction is against a *non-party* who should not be expected to wait for appeal until the litigation's termination. *See De Sisto College, Inc. v. Line,* 888 F.2d 755, 762 (11th Cir.1989); *see also Riverhead Sav. Bank v. National Mortg. Equity Corp.,* 893 F.2d 1109, 1114 (9th Cir.1990).

26. The pertinent terms of 28 U.S.C.A. § 1291 are:

"The courts of appeals shall have jurisdiction of appeals from all *final decisions* of the district courts of the United States ... except where a direct review may be had in the Supreme Court...." [Emphasis mine.]

The collateral order doctrine is an "exception to the final judgment rule." It rests on the premise that a "'final decision' for purposes of § 1291" need not always be an action-terminating judgment. *Abney v. United States,* 431 U.S. 651, 658–659, 97 S.Ct. 2034, 2039–2040, 52 L.Ed.2d 651 (1977).

*separable from the mainstream action,* (2) are too important to be denied immediate appellate review and (3) are too independent of the main action to require an appellate court to defer consideration until the litigation's completion.[27] In my view the decision here under consideration *substantially touches, if not totally meets, all the criteria of a collateral order.*

*The mainstream proceeding* in a testate decedent's probate is the orderly administration of the estate for final distribution in accordance with the will.[28] The will determines not only the testamentary gift's recipient but also the nature and amount of each beneficiary's bounty. During the course of the estate's administration the court may be called upon to make off-track rulings which are independent of or collat-eral to proceedings in the probate's mainstream. This takes place when claimants, as the children here, seek to establish their share and hence affect the distribution regime under the will.[29]

By applying for a statutory share of the estate, the children brought *a contest quite apart from the probate's mainstream.* Because of their legacy's ademption they will take nothing under the will's terms.[30] In a very real sense *the court's off-track disposition of their application shut them out of the case;*[31] *they no longer qualify as parties with a claim to be pressed.*[32]

If the court were to treat this appeal as one from a final order, as I would do today, the appellate resolution of the issue before

27. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–2458, 57 L.Ed.2d 351 (1978), where the oft-quoted three-part formula for the collateral order doctrine was formulated. *See also Rodriguez v. Banco Central,* 790 F.2d 172, 177 (1st Cir.1986), where appeals in this class are found to rest upon "separability, finality, urgency, and importance."

Federal courts are reluctant to expand the doctrine lest it erode the basic finality requirement and flood their dockets with collateral order appeals. The trend to keep the exception narrow is particularly evident in criminal cases. 15A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure Jurisdiction 2d* § 3911 at 353–356 (1984). *See Flanagan v. United States,* 465 U.S. 259, 265–266, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288 (1984), where the United States Supreme Court rejected the immediate appeal of a district court's pretrial disqualification of defense counsel in a criminal prosecution.

28. A judicial determination of heirship—either under 84 O.S.1991 § 251 and 252 or under 58 O.S.1991 § 631 and 634—is always in the mainstream. *All those claiming as heirs stand in the same legal position.* A trial court's ruling identifying less than all of the heirs would be interlocutory. *The court must determine all the heirs; it may not leave undetermined any on-track issues. State v. District Court of Osage County,* 190 Okl. 659, 126 P.2d 255 (1942). By contrast, the children here do not seek a judicial determination of *heirs.* Rather, their side-track quest is for *special status* to be conferred by § 132, independent of the probate in which the court will determine the testamentary gift recipients. See supra note 11 for the terms of 84 O.S.1991 § 132. *No other issues remain to be decided in the collateral proceeding for omitted-heirship status.*

29. In probate one court may be called upon to determine a number of off-track contests. For example, a widow may elect to take a statutory share or a party may seek enforcement of an antenuptial agreement. *See* 84 O.S.1991 § 44(B)(1).

30. *See supra* note 10 for an explanation of *ademption.*

31. *See Oklahomans For Life, Inc. v. State Fair of Okl.,* Okl., 634 P.2d 704, 706 (1981), *where the dismissal of a party defendant was held to be terminal and hence at once appealable as a final order.*

Ordinarily, an order's finality is not measured by its impact upon the aggrieved party, but rather by the effect it has on the termination of the proceedings. *In re Estate of Caldwell,* Okl., 692 P.2d 1380, 1381 n. 5 (1984). Where the proceeding is truly *collateral to the mainstream,* the focus should be upon the order's *termination of the independent off-track contest* rather than on its effect upon the mainstream issues. For example, *the determination that a child may be adopted without a parent's consent must be made in an ancillary proceeding anterior to the decree. See* 10 O.S.1991 §§ 60.5 and 60.6; *Matter of Adoption of J.L.H.,* Okl., 737 P.2d 915, 918 & n. 6 (1987). If a child is declared eligible for a consentless adoption, *a decision adverse to the non-consenting parent is at once appealable as final even though the adoption proceeding stands short of completion. See Adoption of J.L.H., supra* at 918.

32. After denial of their omitted-heir status appellants would no longer occupy the position of "parties," i.e. active participants in the probate; rather, they would be relegated to "interested parties" status. *Matter of Estate of Goyne,* Okl., 733 P.2d 391, 394–395 (1987).

us would become the *settled law of the case.*[33] As a practical matter, the trial court has conclusively settled the disputed question.[34] Although the children will have another opportunity to renew their heirship-status claim (i.e., by raising it later as an objection to the final account and petition for distribution), our extant jurisprudence eloquently demonstrates that an aggrieved party's legal power to reassert a plea for relief *after its initial denial,* or a plaintiff's ability to "wire around" an adverse order and still remain in court, *does not per se sap the decision of finality attributes.* For example: (1) a condemnation order denying a challenge by condemnees to condemnor's power to take—by eminent domain generally or a specific property—*can be renewed* before the final condemnation decree; *yet the decision is at once appealable as final;* [35] (2) the court's dismissal without prejudice or a suit's termination "otherwise than on the merits" is *no* bar to an action's later refiling; [36] *yet the dismissal or termination order is at once appealable as final;* [37] and lastly, (3) an order quashing process is no bar to issuance of an alias summons; *yet the order is at once appealable as final.*[38] All these orders, just as the one

33. The settled-law-of-the-case doctrine bars relitigation of issues that have been resolved by an earlier appellate opinion in that case. *Reeves v. Agee,* Okl., 769 P.2d 745, 756 n. 46 (1989); *Timmons v. Royal Globe Ins., Co.,* Okl., 713 P.2d 589, 592 (1986); *Mullins v. Ward,* Okl., 712 P.2d 55, 61 n. 13 (1985); *Mobbs v. City of Lehigh,* Okl., 655 P.2d 547, 549 n. 5 (1982). If this appeal were to be entertained and decided, the doctrine would apply to bar later relitigation of *the same issues.*

When, as here, several cognate matters are litigated in the framework of one case, there may be *several successive final and appealable* orders, although the law contemplates but one judgment that disposes of the main action. *Stubblefield,* supra note 13 at 624; *State ex rel Board of Public Affairs v. Neff,* 205 Okl. 205, 236 P.2d 681, 683 (1951).

34. Without omitted-child status, petitioners have *no* standing to participate in the estate's administration. *See supra* note 32. Their only recourse is to stand by while the estate is administered and then appeal from the distribution decree. Property may be distributed during the estate's administration which might be lost before an appeal from the final decree could be lodged. Bond requirements, such as those provided where partial distribution is permitted, i.e., 58 O.S.1991 § 621, *supra* note 18, may afford little protection to parties who have no standing to ensure that statutory safeguards are enforced.

35. *See Watchorn Basin Assn. v. Oklahoma Gas & Elec. Co.,* Okl., 525 P.2d 1357, 1359 (1974), where the court held that the trial court's adjudication of the condemnor's right to condemn is appealable as a final order; *see also Town of Ames v. Wybrant,* 203 Okl. 307, 220 P.2d 693, 695–696 (1950). *There the condemnor threatened to take possession of the property before a challenge to its right to condemn had been heard.* The court held the landowner may challenge the right to condemn and test that decision on appeal *prior to final determination of the award for damages.* If those who assert their omitted-heir status in probate must wait until the estate's distribution to have their rights determined, *they will suffer hardship similar to that of condemnees*—possible *delivery* of assets to others *before* their own claim to ownership has been decided.

36. The terms of 12 O.S.1991 § 100 provide in pertinent part:

"... [I]f the plaintiff [should] fail in [an] action ... *otherwise than upon the merits,* [he] ... may *commence a new action within one (1) year* after the reversal or failure...." [Emphasis mine.]

37. The pertinent terms of 12 O.S.1991 § 2012 G. are:

"On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied.... If [an] amended pleading is not filed within the time allowed, final judgment of dismissal with prejudice shall be entered.... *Within the time allowed by the court for filing an amended pleading, a plaintiff may voluntarily dismiss the action without prejudice.*" [Emphasis mine.]

*See Kelly v. Abbott,* Okl., 781 P.2d 1188, 1190–1191 (1989).

Before adoption of the Oklahoma Pleading Code, 12 O.S.1991 §§ 2001 *et seq.,* an order sustaining a demurrer to the petition was appealable as final if the plaintiff elected to stand on the petition and refused to plead further. *See Merchants Delivery Service, Inc. v. Joe Esco Tire Co.,* 533 P.2d 601 (1975); *State Ins. Fund v. Trieschmann,* 206 Okl. 533, 244 P.2d 1128, 1131 (1952); *Southwestern Natural Gas Co. v. Vernor,* 178 Okl. 344, 62 P.2d 1262, 1265 (1936).

38. *Martin v. District Court of Comanche County,* Okl., 460 P.2d 898, 899 (1969); *Marks v. McCune Const. Co.,* Okl., 370 P.2d 560 (1962) (Syllabus ¶ 1); *Harder v. Woodside,* 196 Okl. 449, 165 P.2d 841, 842 (1946); *Webster v. Crump,* 117 Okl. 244, 246 P. 423, 424 (1926).

considered today, may be tendered for immediate appellate review.

## III

## BECAUSE THE CHILDREN'S AVENUE OF PROCEDURE WAS OBSCURELY ARTICULATED AND CASE LAW MISLEADING, THIS APPEAL SHOULD BE SAVED FROM DISMISSAL

The text of 58 O.S.1991 § 721(7), defines as appealable any order *"[r]efusing ... the payment of a ... distributive share."* [39] Rule 1.10 [40] *indicates by reference that subdivision 7 orders are appealable as final.* Extant jurisprudence refers to subdivision 7 orders as final.[41] Statute, rule, and case law together give the *appearance* of finality to the order under review. *The line of demarcation between mid-probate orders that are final and those that are interlocutory is at best unclear in our jurisprudence.*

Under the teaching of *Poafpybitty v. Skelly Oil Company* [42] and its progeny,[43] this court has rescued from dismissal an appeal on more than one occasion to keep procedural snares, ambiguous legislative enactments or misleading jurisprudence from becoming a veritable trap. Here, where the court's own rules contribute to the confusion, it is especially fitting that the court give today *purely prospective* application to its decision that this mid-probate appeal is interlocutory. The children should not be penalized for a lawyer's false prediction of which § 721 classification the court would accord to an order that denies an omitted heir his distributive share of the estate.

## SUMMARY

As Summers, J. counsels, I would overrule *Tayrien* [44] but *only* insofar as it holds the order denying partial distribution to an omitted heir is not appealable under the provisions of 58 O.S.1951 § 721. As for my response to the court's conclusion that the quest for corrective relief came too late, I would not *gauge* this mid-probate order's *finality* by tacitly applying, as the court does today, the notions of § 1006 [45]—

**39.** For the complete text of subdivision 7, *see supra* note 3. The children have been refused a distributive share of the estate.

**40.** Rule 1.10, Rules of Appellate Procedure in Civil Cases, 12 O.S.1991 Ch. 15, App. 2, provides in pertinent part:
"... A judgment includes any judgment or *final order* appealable under the provisions of:
\* \* \* \* \* \*
(9) *58 O.S.1981 § 721 Subdiv. (7)* \* \* \*" [Emphasis mine.]

**41.** *See, e.g., Estate of Griffin,* Okl., 554 P.2d 785, 787 (1976), where the court holds that orders within the purview of subdivision 7 are appealable as final.

**42.** Okl., 394 P.2d 515, 520 (1964).

**43.** *Hale v. Bd. of Cty. Com'rs. of Seminole Cty.,* Okl., 603 P.2d 761, 764 (1979); *Isbell v. State, Etc.,* Okl., 603 P.2d 758, 760 (1979) (Opala, J., concurring specially). *Hale's* and *Isbell's* rationale followed that of *Poafpybitty,* where the court applied prospectively its pronouncement on motions for new trial for review of errors in determining an issue of law. In *Hale* the aggrieved party timely appealed to the Court of Criminal Appeals from an adverse judgment on a jury verdict in an ouster proceeding. Because the law was unclear whether the case should have been brought to the Supreme Court, we (a) saved the appeal timely filed *in the wrong court* and (b) treated it as though it had been filed *in this court.* The appellant in *Isbell* commenced an appeal after lapse of the 30–day period provided for APA-governed cases. She relied on a 60–day statute still on the books. We saved her appeal from the trap of a not-so-readily detectable change in statutory law. *See also* two examples of our recent *purely prospective* application given to appellate procedure drawn from obscurely articulated statutes in *Jaco Production Company v. Luca,* Okl., 823 P.2d 364, 364–365 (1992) and *Heimbach v. Guiney,* Okl., 827 P.2d 170 (1992).

**44.** *See supra* note 17.

**45.** The pertinent terms of 12 O.S.1991 § 1006 are:
"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of judgment. *In the absence of such determination and direction, any order or other form of decision, however*

whose appealability standards require *everyone's claim* to have been decided below. Nor would I apply the § 681 [46] criteria, which define as "judgment"—in the § *952(a)* [47] appealability sense—*only* that *nisi prius* disposition which resolves *all* the issues on the merits of an action. *None of these sections governs probate appeals.* The court's tenacious commitment to these irrelevant gauges is *without any legal warrant. An unterminated probate,* [48] like that in the case before us today, may indeed bring forth a final order.

I cannot countenance today's dismissal of this appeal. Because the denial of appellants' quest for omitted-heirship status (a) *refuses to allow them a distributive share* of the estate within the meaning of § 721(7), [49] (b) terminates their mid-probate collateral (off-track) [50] contest, and (c) in a real sense dismisses them as "parties" to this probate, [51] I would regard as final the order we are called upon to review. The issues before us are clearly outside the probate's mainstream. Because the court's decision—holding that this mid-probate appeal is interlocutory—*settles unclear and misleading jurisprudence of yore and obscurely couched court rules,* today's holding should be *purely prospective* in keeping with the teachings of *Hale, Isbell* and *Poafpybitty.* [52]

---

designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action...." [Emphasis mine.]

**46.** The terms of 12 O.S.1991 § 681 are:
"A judgment is the *final* determination of the rights of the parties in an action." [Emphasis mine.]

**47.** The pertinent terms of 12 O.S.1991 § 952(a) are:
"The Supreme Court may reverse, vacate or modify *judgments of the district court* for errors appearing on the record, and in the reversal of such judgment may reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof." [Emphasis mine.]

---

**48.** An unterminated probate is one which is *at a stage anterior to* the entry of a decree of distribution. *See supra* note 22.

**49.** For the terms of 58 O.S.1991 § 721(7), *see supra* note 3.

**50.** *See supra* note 6 for the meaning of "collateral" and "off-track" in this dissent.

**51.** *See supra* note 32 for the difference between the status occupied by a *"party"* and that of an *"interested party." See also supra note 34 for the* comment that petitioners' lack of standing leaves them exposed to problems that may occur in the last phase of the estate's administration.

